Carolyn J. Fairless (admitted *pro hac vice*)
Jennifer J. Oxley (admitted *pro hac vice*)
Nicholas J. Steverson (admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: fairless@wtotrial.com
        oxley@wtotrial.com
        steverson@wtotrial.com

John D. Munding
Munding, P.S.
309 E. Farwell Road, Suite 310
Spokane, WA 99218
Telephone: 509.590.3849
Email: john@mundinglaw.com

Attorneys for Defendant Perkins Coie LLP

Hon. Whitman L. Holt

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>ICAP ENTERPRISES, INC., *et al.*<br><br>                       Debtors.<br><br>―――――――――――――――<br>Lance Miller and Seth Freeman as Co-Trustees of the iCap Trust,<br><br>      Plaintiffs,<br><br>v.<br><br>Perkins Coie LLP, a Washington limited liability partnership,<br><br>      Defendant. | Chapter 11<br><br>Lead Case No. 23-01243-WLH11<br>(Jointly Administered)<br><br>Adv. Case No. 25-80084-WLH<br><br><br>PERKINS COIE LLP'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................iii

INTRODUCTION ............................................................................................................... 1

SUMMARY OF ALLEGATIONS ........................................................................................ 1

I.     ICAP'S FORMATION .............................................................................................. 1

II.    ICAP'S FINANCIAL DIFFICULTIES ...................................................................... 2

III.   THE FINALIZATION OF FUND 3 AND FURTHER EXTENSION OF FUND 1'S MATURITY DATE ........................................................................... 3

IV.   PERKINS LEARNS THAT ICAP DID NOT FOLLOW ITS ADVICE ............. 4

V.    ICAP DECLARES BANKRUPTCY ........................................................................ 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ..................................................................................................................... 6

I.     THE COURT LACKS SUBJECT-MATTER JURSIDICTION. ...................... 7

    A.    Plaintiffs' claims do not "arise under" the Bankruptcy Code or "arise in" a bankruptcy case. .................................................................. 7

    B.    Plaintiffs' claims are not "related to" a bankruptcy case because they do not share a close nexus with the confirmed bankruptcy plan. .......................................................................................................... 8

II.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM OR RELIEF .......... 10

    A.    Plaintiffs fail to plead a plausible claim for aiding and abetting fraud. ............................................................................................... 10

        1.   Plaintiffs have not alleged a predicate fraud with particularity. ............................................................................. 10

        2.   The Complaint merely suggests Perkins knew Fund 1 could face default—not that Perkins had actual knowledge of a Ponzi scheme. ....................................................................... 13

        3.   Plaintiffs merely allege that Perkins acted as iCap's attorneys, not that Perkins "substantially assisted" iCap's fraud. ................................................................................... 15

    B.    The aiding and abetting breach of fiduciary duty claim also fails. .......... 18

        1.   Plaintiffs have not plausibly alleged a breach of fiduciary duty. .................................................................................. 18

2.  Plaintiffs have not plausibly alleged that Perkins had actual knowledge of the Christensens' alleged breaches of fiduciary duty. ...........................................................20

3.  Plaintiffs have not plausibly alleged that Perkins substantially assisted the Christensens' alleged breaches of fiduciary duty. ...........................................................20

CONCLUSION ...........................................................20

# TABLE OF AUTHORITIES[1]

**CASES**

*3710 Irongate, LLC v. Unit Owners Ass'n. of Judson Plaza Condo.*,
No. 86717-2-I, 2025 WL 3143153
(Wash. App. Div. 1 Nov. 10, 2025) ........................................................ 19

*Abrams v. McGuireWoods LLP*,
518 B.R. 491 (N.D. Ind. 2014) ....................................................... 16, 17

*Aetna Cas. & Sur. Co. v. Leahey Const. Co.*,
219 F.3d 519 (6th Cir. 2000) .................................................................. 13

*Agena v. Cleaver-Brooks, Inc.*,
No. 19-cv-00089-DKW-RT, 2019 WL 11248590
(D. Haw. Oct. 31, 2019) ......................................................................... 11

*Am. Bank of St. Paul v. TD Bank, N.A.*,
713 F.3d 455 (8th Cir. 2013) .................................................................. 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................... 6, 18, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 13, 18, 19

*Cafasso ex rel. United States v. Gen Dyn. C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) .......................................................... 6, 11

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) .................................................................................. 7

*Cnty. of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022) ..................................................................... 8

*Darrough v. SOC LLC*,
No. 2:20-cv-01951, 2025 WL 1380644
(D. Nev. May 12, 2025) ........................................................................... 11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...................................................................... 6

*In re Agape Lit.*,
681 F. Supp. 2d 352 (E.D.N.Y. 2010) .................................................... 15

*In re Consolidated Meridian Funds*,
485 B.R. 604 (W.D. Wash. 2013) ....................... 7, 10, 11, 12, 13, 14, 15, 18, 19, 20

---

[1] The unpublished cases cited in this motion are attached as Exhibit B, pursuant to LCivR 7(g)(2).

*In re Consolidated Meridian Funds*,
    511 B.R. 140 (W.D. Wash. 2014) ................................................................. 9

*In re Haines*,
    Adv. No. 08–04066, 2008 WL 4279374
    (Bankr. W.D. Wash. Sept. 11, 2008) ........................................................ 6

*In re Int'l Mfg. Grp., Inc.*,
    574 B.R. 717 (Bankr. E.D. Cal. 2017) ..................................................... 10

*In re Pegasus Gold Corp.*,
    394 F.3d 1189 (9th Cir. 2005) ............................................................. 7, 8

*In re Ray*,
    624 F.3d 1124 (9th Cir. 2010) ........................................................ 7, 8, 10

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) .................................................................. 8

*In re Slatkin*,
    525 F.3d 805 (9th Cir. 2008) ............................................................... 12

*In re Tracht Gut, LLC*,
    836 F.3d 1146 (9th Cir. 2016) ............................................................. 1, 6

*King v. George Schonberg & Co.*,
    233 A.D.2d 242 (N.Y. App. 1996) ........................................................ 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................. 6

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ................................................................. 6

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ................................................................ 13

*Liebergesell v. Evans*,
    613 P.2d 1170 (Wash. 1980) ............................................................... 20

*Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*,
    40 P.3d 1206 (Wash. App. 2002) ..................................................... 18, 19

*ML Serv. Co., Inc. v. Greenberg Traurig, LLP*,
    No. CV11-0832-PHX DGC, 2011 WL 3320916
    (D. Ariz. Aug. 2, 2011) ........................................................................ 9

*Rubio v. Cap. One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ............................................................. 12

*Schatz v. Rosenberg*,
    943 F.2d 485 (4th Cir. 1991) ........................................... 13, 14, 16, 17

*VHS Liquidating Tr. v. Blue Cross of Cal.*,
   No. 21-4034, 2021 WL 11134503
   (Bankr. N.D. Cal. Nov. 22, 2021)..................................................7, 9

*Wiand v. Wells Fargo Bank, N.A.*,
   938 F. Supp. 2d 1238 (M.D. Fla. 2013) ....................................13

**STATUTES**

28 U.S.C. § 1334...............................................................1, 7, 8, 9, 10

**RULES**

Fed. R. Bankr. P. 7009 .............................................................6

Fed. R. Bankr. P. 7012 .............................................................6

Fed. R. Civ. P. 9......................................................................6

Fed. R. Civ. P. 12 ................................................................6, 10

Wash. R. Prof'l Cond. 1.16......................................................17

Wash. R. Prof'l Cond., Scope cmt. 20 ....................................17

**OTHER AUTHORITIES**

Ronald E. Mallen,
   1 Legal Malpractice § 2:87 (2025 ed.) ..................................17

**INTRODUCTION**

This lawsuit arises out of legal services that Perkins Coie LLP ("Perkins") provided years ago to now-bankrupt business entities (the "Debtors"), which Plaintiffs claim operated a Ponzi scheme. Plaintiffs (who obtained assignments of claims from unnamed investors in some of the Debtors' funds) allege that Perkins "aided and abetted" this scheme by providing routine legal services to the Debtors. But Plaintiffs fail to establish how their state-law claims—which raise zero questions of bankruptcy law—fall within this Court's jurisdiction. For jurisdiction to exist under 28 U.S.C. § 1334 in a post-confirmation case like this, there must be a ***close nexus*** between the claims and the confirmed liquidation plan. No such nexus exists here, where Plaintiffs assert state-law claims that the investors could have brought pre-confirmation and pre-petition. Thus, the case should be dismissed for lack of subject matter jurisdiction.

Even if there were jurisdiction, Plaintiffs' claims are fatally defective. Plaintiffs allege that Perkins aided and abetted the Debtors' fraud and breach of fiduciary duty—but never identify, as they must: (i) the investors who were supposedly defrauded; (ii) how any investor relied upon any particular misrepresentation; or (iii) when any investment occurred, which fund any investor contributed to, or the amount of their investment. Likewise, Plaintiffs fail to plausibly allege that Perkins had actual knowledge of the Debtors' misconduct, much less substantially assisted the misconduct. At most, Plaintiffs claim that Perkins knew some of the Debtors' funds were faltering and provided them with legal services. But helping clients with legal problems is exactly what lawyers are supposed to do, and they are not subject to suit by third parties for doing so. Plaintiffs' claims are not plausible, and the Court should dismiss them.

**SUMMARY OF ALLEGATIONS[2]**

**I.    ICAP'S FORMATION**

Chris and Jim Christensen founded iCap Enterprises, Inc. in 2007, and they later

---

[2] Plaintiffs' allegations (which Perkins disputes) are presented as true solely for purposes of this motion. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

founded other entities under its umbrella (together, "iCap").[3] (Compl. ¶ 11.) Several were formed as investment funds to solicit private real estate investments, including the entities defined in the Complaint as Fund 1, Fund 2, Fund 3, iCap Funding, iCap Investments, and Vault 1. (*Id.* ¶¶ 12, 25.) Starting in 2011, Perkins drafted documents for Fund 1, Fund 2, and Fund 3, and Plaintiffs allege that Perkins later gave advice regarding disclosures to be made in connection with agreements to extend Fund 1's maturity date. (*Id.* ¶¶ 93–94, 100.) Separately, Perkins allegedly provided corporate and intellectual property advice to iCap and represented it in two litigation cases. (*Id.* ¶ 95.)

## II.    ICAP'S FINANCIAL DIFFICULTIES

After learning in December 2015 that Fund 1 and Fund 2 would not meet their maturity dates, Perkins gave advice about how to effectuate extensions of those dates. (*Id.* ¶¶ 113–14.) In a May 2016 letter to investors seeking approval of an extension of Fund 1's maturity date, the Christensens stated that the extension was necessary because of strong demand, when in fact the fund was generating poor returns. (*Id.* ¶ 22.) Plaintiffs do not claim Perkins provided advice about the statements in that letter. By January 2017, iCap's internal projections reflected that it was experiencing cashflow concerns, but Chris Christensen did not discuss these concerns publicly. (*Id.* ¶¶ 56–57.)

By August 2017, the maturity date of Fund 1 had been extended to December 2017, and iCap intended to extend the maturity date of Fund 2 to December 2018. (*Id.* ¶ 114.) Perkins allegedly knew by September 2017 that Fund 1 and Fund 2 had not performed, were unable to meet their payment obligations to investors, and intended to extend their maturity dates. (*Id.* ¶ 117.) iCap also owed Perkins $68,678 in fees by September 2017. (*Id.* ¶ 106.) After Perkins attorney Martha Sandoval requested payment, Chris Christensen told her that Fund 3 was "just getting finalized" and if the

---

[3] These entities are the Debtors in the Main Case. (*Id.* ¶ 1 n.1.) Plaintiffs generally allege that Perkins "represented the iCap Entities," but only allege that Perkins had an engagement letter with the entity defined in the Complaint as "Fund 3." (*Id.* ¶¶ 25, 93.) Elsewhere, Plaintiffs allege that Perkins provided legal services to only some of these entities. (*E.g.*, *id.* ¶ 91 (alleging Perkins provided services to "Funds 1 through 3.").)

offering could be finalized in "the next week or so . . . this bill is a valid use of those proceeds." (*Id.* ¶ 106.) iCap stayed behind on payments through early 2018 and fell behind again in Q3 of 2018 and Q3 of 2019. (*Id.* ¶¶ 108–10.)

## III. THE FINALIZATION OF FUND 3 AND FURTHER EXTENSION OF FUND 1'S MATURITY DATE

In September 2017, Chris Christensen asked Ms. Sandoval for advice regarding Fund 3, claiming the Fund's proceeds would be used to pay down existing debt. (*Id.* ¶ 115.) The offering memorandum for Fund 3 that Perkins helped prepare stated: "In utilizing the proceeds from this Offering, the Company plans to pursue three primary investment strategies. These strategies include: forming new fund vehicles, investing in financial instruments secured by real property, and acquiring and holding real estate for investment purposes."[4] (*Id.* ¶ 116.)

In November 2017, Chris Christensen asked Ms. Sandoval to discuss a further extension of Fund 1's maturity date. (*Id.* ¶ 118.) Afterwards, Ms. Sandoval wrote to some of her partners that "Chris is seeking guidance on possible ways to approach this transaction (within the confines of the debenture or creatively) as well as guidance on risks of litigation/ways to mitigate" and she would "like to discuss what approach should be taken for disclosing to the 2 active funds." (*Id.* ¶ 120.) In another email, a Perkins attorney cautioned that "My 2 cents is that the Fund is better off not being too 'rosy' about the outlook of the fund if they know now they will fall short." (*Id.* ¶ 125.) Another Perkins attorney told Ms. Sandoval that investors could potentially claim that, when Fund 1 previously extended its maturity date, the Fund misrepresented that it would be able to repay investors by December 31, 2017. (*Id.* ¶ 127.) The attorney advised that the risk of such a claim "might increase the Fund's incentive to reach an extension agreement with all remaining investors and/or make them whole if they want

---

[4] As noted below, the Court may consider this document, even though Plaintiffs do not attach it to their Complaint. It plainly states that an estimated $3.72 million of the money raised in Fund 3 would be used for "Retirement of Debt," which "refer[ed] to legacy obligations of the iCap Affiliates." (*Ex. A*, Offering Materials, at 3 & n.4.)

Motion to Dismiss
Page - 3

to exit." (*Id.*) That same month, Chris Christensen responded to a query from Ms. Sandoval about how exited investors in Fund 1 would be made whole. (*Id.* ¶ 123.) He replied, in part, that "We could make them all whole through the proceeds of other future project exits when they happen, but doing so would mean we would not be re-investing those funds into projects that will generate returns for the remaining investors, which prolongs our ability to pay the remaining investors off." (*Id.*)

On January 30, 2018, Chris Christensen sent to Ms. Sandoval a draft of a proposed letter to investors regarding the extension of Fund 1's maturity date. (*Id.* ¶ 137.) Ms. Sandoval returned Perkins' comments on the letter to him, adding the following language to the letter: "Note that by signing the Amendment form, you will be altering your rights and obligations with respect to the Fund." (*Id.* ¶ 139.) Ms. Sandoval also requested access to the iCap Investor Portal, which she did not receive. (*Id.* ¶¶ 140–41.) Perkins then prepared drafts of an amended debenture and amended debenture agreement and sent them to Chris Christensen in February 2018. (*Id.* ¶ 142.)[5]

In March 2018, the Christensens sent a letter to investors seeking a further extension of Fund 1's maturity date, which did ***not*** include Perkins' revisions and was not provided to Perkins. (*Id.* ¶¶ 22, 141.) The letter incorrectly stated that Fund 1 had "strong" returns. (*Id.*) Soon after, on March 21, the Christensens stated in a Fund 2 report that the Fund was performing well, but it was not. (*Id.*)[6]

## IV. PERKINS LEARNS THAT ICAP DID NOT FOLLOW ITS ADVICE

Almost a year later, on January 11, 2019, Chris Christensen asked Ms. Sandoval to attend a call with PricewaterhouseCoopers LLP ("PwC"), which was auditing Fund 1 and Fund 2, to answer PwC's questions about the funds' maturity dates. (*Id.* ¶ 144.)

---

[5] During this same time period, Perkins negotiated a settlement with Stalwart Capital, iCap's opponent in unrelated litigation. (*Id.* ¶ 131.) Perkins and iCap considered sending an email to Stalwart's counsel, which stated that Fund 1 "is Not Profitable Yet." (*Id.*) Perkins later recommended that iCap keep this message "short and sweet" and noted that "any details about the current fund you disclose could be used against you by a sore investor down the line." (*Id.* ¶ 135.)

[6] Plaintiffs do not allege that Perkins drafted this report.

The call took place on January 17, 2019, and days later, Ms. Sandoval emailed another Perkins partner to say that she had "gotten new facts" about the maturity dates. (*Id.* ¶¶ 144–45.) The next week, on January 24, 2019, Ms. Sandoval emailed Chris Christensen and requested documents related to Fund 1 and Fund 2, telling him "we need to know exactly what was sent to the investors." (*Id.* ¶ 146.) He sent the materials a week later. (*Id.* ¶ 147.) On February 22, 2019, Ms. Sandoval wrote to Chris Christensen, stating that she learned during the January 17 call with PwC that:

- Fund 1 had not paid the balance on any note held by a redeeming investor;

- Fund 1 did not intend to satisfy its obligations under the notes held by redeeming investors until December 31, 2020;

- The investor letter that iCap actually sent to Fund 1 investors did not incorporate Perkins's revisions; and

- The maturity date for Fund 2 had also been extended, using the same method by which the maturity date for Fund 1 had been extended.

(*Id.* ¶ 148.)

Given the new facts she learned on the call with PwC, Ms. Sandoval told Chris Christensen that Perkins "would be unable to tell PwC that Fund 1 is not in default." (*Id.*) She said his options were to (a) authorize her to tell PwC that Fund 1 was in default; (b) withdraw iCap's approval for Perkins to discuss further with PwC; or (c) "Perkins Coie withdraws as counsel for iCap's funds." (*Id.*) Perkins did not participate in any further discussions with PwC. (*Id.* ¶ 154.) After that, Perkins only provided unspecified corporate, litigation, and intellectual property services to iCap until 2023. (*Id.* ¶ 157.)

## V.    ICAP DECLARES BANKRUPTCY

From 2013 to July 2023, approximately 1,800 investors contributed to Fund 1, Fund 2, Fund 3, iCap Investments, iCap Funding, and iVault. (*Id.* ¶¶ 1, 25.) iCap filed bankruptcy in 2023, and in October 2024, the Bankruptcy Court confirmed a liquidation plan. (*Id.* ¶ 4.) The plan established the iCap Trust, to which "a substantial majority" of investors contributed their claims against third parties. (*Id.* ¶ 7.) Plaintiffs, as trustees,

Motion to Dismiss
Page - 5

now bring the investors' claims against Perkins as assignees of the claims.

## LEGAL STANDARD

The Court must dismiss this action if it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3); Fed. R. Bankr. P. 7012(b) (incorporating Fed. R. Civ. P. 12(b) in adversary proceedings). It is presumed that Plaintiffs' claims lie outside the limited jurisdiction of federal courts. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiffs bear the burden of proving otherwise. *Id.*; *In re Haines*, Adv. No. 08–04066, 2008 WL 4279374, at *1 (Bankr. W.D. Wash. Sept. 11, 2008).

The Court may also dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Tracht Gut, LLC*, 836 F.3d at 1150–51 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the Court does not need to accept as true conclusory statements, legal conclusions, or recitations of the elements of a claim. *Id.* at 1150–51. Nor is the Court required to accept as true allegations that contradict documents referenced in the Complaint. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Instead, Plaintiffs must plead sufficient ***facts*** "to cross the line between possibility and plausibility." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–97 (9th Cir. 2014).

Plaintiffs' fraud-based claim must also satisfy the particularity standard of Fed. R. Civ. P. 9(b). Fed. R. Bankr. P. 7009 ("Fed. R. Civ. P. 9 applies in an adversary proceeding."). To do so, the complaint "must identify the who, what, when, where, and how" of the alleged fraud, "as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso ex rel. United States v. Gen Dyn. C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotations and alteration omitted).

## ARGUMENT

The Court lacks subject-matter jurisdiction to hear Plaintiffs' claims, so they must

be dismissed. Plaintiffs rely on 28 U.S.C. § 1334 to establish jurisdiction. But as the Ninth Circuit has held, jurisdiction under § 1334 after the confirmation of a bankruptcy plan exists *only* when there is a "close nexus" between the claims and the plan. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005). No such nexus exists here over Plaintiffs' state-law claims that existed pre-bankruptcy. *In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010); *VHS Liquidating Tr. v. Blue Cross of Cal.*, No. 21-4034, 2021 WL 11134503, at *6 (Bankr. N.D. Cal. Nov. 22, 2021) (ruling there was no jurisdiction over claims assigned to trustee of a liquidating trust under confirmed plan).

Even if Plaintiffs could establish subject-matter jurisdiction (they cannot), Plaintiffs fail to state a plausible claim for relief against Perkins. To state a claim for aiding and abetting, Plaintiffs must plausibly allege that an underlying tort occurred that Perkins had actual knowledge of and substantially assisted in. *In re Consolidated Meridian Funds*, 485 B.R. 604, 616 (W.D. Wash. 2013). Plaintiffs fail to allege facts that plausibly establish *any* of these elements, for either of their claims, and they fail to plead their fraud-based claim with particularity. Both claims must be dismissed.

## I. THE COURT LACKS SUBJECT-MATTER JURSIDICTION.

The jurisdiction of all federal courts is grounded in and limited by statute. *In re Ray*, 624 F.3d at 1130 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Plaintiffs assert only one statutory basis for jurisdiction: 28 U.S.C. § 1334. (Compl. ¶ 9.) In turn, § 1334 provides that the federal district courts "shall have original but not exclusive jurisdiction of all civil proceedings [i] arising under title 11, or [ii] arising in or [iii] related to cases under title 11." § 1334(b). None of these provisions applies here.

### A. Plaintiffs' claims do not "arise under" the Bankruptcy Code or "arise in" a bankruptcy case.

A proceeding does not "arise under" the Bankruptcy Code unless "it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray*, 624 F.3d at 1131. Similarly, a proceeding does not "arise in" a bankruptcy case unless "it is an administrative matter unique to the bankruptcy process that has no

independent existence outside of bankruptcy and could not be brought in another forum." *Id.* State-law claims—like Plaintiffs' claims against Perkins—do not "arise under" the Bankruptcy Code or "arise in" a bankruptcy proceeding. *Id.* at 1132–33. Thus, there is no jurisdiction over Plaintiffs' claims under those provisions of § 1334.

### B. Plaintiffs' claims are not "related to" a bankruptcy case because they do not share a close nexus with the confirmed bankruptcy plan.

Nor is there jurisdiction under § 1334's provision for proceedings "related to cases under title 11." Post-confirmation jurisdiction over proceedings "related to" a bankruptcy case is "necessarily more limited than pre-confirmation jurisdiction." *Pegasus Gold Corp.*, 394 F.3d at 1194. For jurisdiction to exist in a post-confirmation case, there must be a "close nexus" between the claims and the bankruptcy plan. *Id.* Only claims that affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan" have the requisite "close nexus" to support jurisdiction. *Id.* (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004)). There is no "close nexus" between a plan and a claim "that could have existed entirely apart from the bankruptcy proceeding and [does] not necessarily depend upon resolution of a substantial question of bankruptcy law." *Ray*, 624 F.3d at 1135.

Instead, for jurisdiction to exist under § 1334 after the confirmation of a bankruptcy plan, the plaintiff's claim must require the "resolution of disputes over the meaning of the plan's terms," and not "merely the application of the plan's plain or undisputed language." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 762 (9th Cir. 2022). In effect, the dispute must concern the manner in which ***the plan itself*** should be interpreted, implemented, or executed. *Compare id.* (holding there was no "related to" jurisdiction over claims against defendants, even when claims could be barred by the terms of a chapter 11 plan entered by one of the defendants, because resolution of the claim would merely require a court to apply the plan's plain language), *with Pegasus Gold Corp.*, 394 F.3d at 1194 (holding there was "related to" jurisdiction over a claim that the defendant breached agreements memorialized in the confirmed plan itself).

*VHS Liquidating Trust* is instructive. 2021 WL 11134503, at *3. There, as here, a debtor underwent chapter 11 bankruptcy, and the bankruptcy court confirmed a plan that created a liquidating trust for the benefit of the creditors. *Id.* at *1. And there, as here, the plan contemplated that the claims at issue would be assigned to the trustee who brought the assigned claims against the defendant. *Id.* at *2. The defendant removed the case to federal court, alleging the claims were "related to" a bankruptcy case under § 1334 because they were assigned under the confirmed plan. *Id.* at *1.

The federal court disagreed, ruling that there was no "close nexus" between the assigned claims and the bankruptcy plan. *Id.* at *5. The court reasoned that the trustee's claims would not "truly involve the interpretation or enforcement of a significant plan provision," because the plan simply assigned the claims to a new owner. *Id.* Nor were the assigned claims a significant subject of negotiation in forming the plan. Instead, the plan simply "listed thirteen categories of claims that were assigned to the trust," all of which were "generically described."[7] *Id.* at *6. Moreover, the mere fact that allowing a claim to proceed in federal court "may lead to a greater plan distribution to creditors" does not create subject-matter jurisdiction. *Id.* Because the trustees' claims did not involve a bona fide dispute over the meaning of the plan's terms, the court concluded that it lacked subject-matter jurisdiction to hear the claims under § 1334. *Id.*

Other courts have reached the same result, finding there is no jurisdiction in a post-confirmation case when the claims do not raise a dispute over the confirmed plan itself. *E.g., ML Serv. Co., Inc. v. Greenberg Traurig, LLP*, No. CV11-0832-PHX DGC,

---

[7] The *VHS* court distinguished *Meridian Funds*, which Plaintiffs may attempt to rely on here, on this basis. *See VHS Liquidating Tr.*, 2021 WL 11134503, at *6. The court in *In re Consolidated Meridian Funds*, 511 B.R. 140, 149 (W.D. Wash. 2014), ruled that it had "related to" jurisdiction over claims by investors against the debtor's accountants, which had been assigned to the trustee of a liquidation trust under the confirmed bankruptcy plan. But the parties in *Meridian* specifically negotiated those claims and their value when negotiating the plan, and their assignment was vital to the plan. *Id.* at 146. Even if the *Meridian* court correctly concluded that it had § 1334 jurisdiction on those grounds, its reasoning does not apply to cases like this one, where the confirmed plan simply mentions the assigned claims as one type of generic claim that may be assigned. *VHS Liquidating Tr.*, 2021 WL 11134503, at *6.

2011 WL 3320916, at *2 (D. Ariz. Aug. 2, 2011) (there was no "related to" jurisdiction over claim against debtor's attorneys when the court would not "be required to interpret the bankruptcy plan in order to resolve Plaintiffs' claims"); *In re Int'l Mfg. Grp., Inc.*, 574 B.R. 717, 719–20 (Bankr. E.D. Cal. 2017) (the court lacked "related to" jurisdiction over claims that would "have no impact on the interpretation, implementation, consummation, execution, or administration of the confirmed liquidation plan").

Likewise, Plaintiffs cannot satisfy the "close nexus" test here. Plaintiffs' claims against Perkins are common-law tort claims that do not depend ***at all*** on the interpretation of the liquidating plan's terms. Rather, the factfinder could resolve Plaintiffs' claims—which existed years before the bankruptcy petition—without even considering the liquidating plan. Thus, there is no "close nexus" and no jurisdiction under § 1334's "related to" provision. *Ray*, 624 F.3d at 1135. Because Plaintiffs cannot prove otherwise, their claims must be dismissed. *Id.*; Fed. R. Civ. P. 12(b)(1), (h).

## II. PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM OR RELIEF

Even if there were jurisdiction over Plaintiffs' claims—and there is not—Plaintiffs fail to state a plausible claim for relief against Perkins. Plaintiffs must plausibly plead three elements to assert a claim for aiding and abetting:

    1) an underlying tort (including all its own elements);

    2) the defendant's actual knowledge of the primary tortfeasor's wrongdoing; *and*

    3) the defendant's substantial assistance in the primary wrong.

*Meridian*, 485 B.R. at 616. Plaintiffs fail to plausibly allege ***any*** of these elements, for either claim. Thus, Plaintiffs' claims must be dismissed.

### A. Plaintiffs fail to plead a plausible claim for aiding and abetting fraud.

#### *1. Plaintiffs have not alleged a predicate fraud with particularity.*

The conclusory allegation that a person operated a Ponzi scheme, without more, is insufficient to state a claim for fraud. *Id.* at 622–23 (finding that Ponzi scheme operator's guilty plea did not, on its own, establish a plausible claim for aiding and

abetting fraud under Washington law). Instead, the plaintiff must allege sufficient ***facts*** to plausibly establish nine separate elements, including: (1) the speaker's representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of the statement's falsity; (5) the speaker's intent that plaintiff act upon the statement; (6) the plaintiff's ignorance of the statement's falsity; (7) the plaintiff's reliance on the truth of the representation; (8) the plaintiff's right to rely upon the representation; *and* (9) damages. *Id.* The plaintiff must allege these elements with particularity—meaning the plaintiff must identify "the who, what, when, where, and how" of the fraud, *Cafasso*, 637 F.3d at 1055, including "which plaintiff was a party to which misrepresentation," *Darrough v. SOC LLC*, No. 2:20-cv-01951, 2025 WL 1380644, at *5 (D. Nev. May 12, 2025). Plaintiffs fail to do so.

 ***First***, the Complaint impermissibly lumps the claims of countless investors together, without identifying who was defrauded or what misrepresentation they relied upon. Plaintiffs say they are the assignees of unspecified investors in Fund 1, Fund 2, Fund 3, iCap Funding, iCap Investments, or Vault 1. (Compl. ¶¶ 1, 25.) But they do not identify which investors assigned their claims, which entity each investor contributed to, when each investor made their contribution, the amount they invested, or what misrepresentation the investor relied upon. And while the Complaint recites a handful of misrepresentations that Chris Christensen allegedly made, (*see id.* at ¶¶ 20–22, 57), Plaintiffs never say "'who'—with respect to each 'particular' [investor]—***received*** each alleged misrepresentation ***and when***." *Agena v. Cleaver-Brooks, Inc.*, No. 19-cv-00089-DKW-RT, 2019 WL 11248590, at *8 (D. Haw. Oct. 31, 2019) (ruling that a complaint which failed to plead this information was not pleaded with particularity). Because the Complaint fails to allege ***which*** investor relied on ***which*** misrepresentation, Plaintiffs have not adequately pleaded an underlying fraud. *Id.* Indeed, Plaintiffs never allege that ***any*** particular investor relied on ***any*** particular misrepresentation.[8]

---

[8] Similarly, Plaintiffs only allege that Perkins provided services to "Funds 1 through 3"—not the other entities in which the investors allegedly invested. (Compl.

**Second**, Plaintiffs selectively quote offering materials for Fund 3 that Perkins allegedly prepared, claiming that these materials falsely stated that the fund would be used to acquire real estate and invest in new instruments, rather than pay down existing debt. (Compl. ¶¶ 116–17.) But that's wrong—the referenced materials plainly state that approximately $3.72 million of the money raised in Fund 3 may be used for "Retirement of Debt" for iCap and its affiliates.[9] (*See Ex. A*, Fund 3 Offering Materials, at 3 & n.4.) In short, if iCap was required to disclose it would use money from Fund 3 to pay down existing debt, it did so in the very document that Plaintiffs cite.

**Third**, Plaintiffs' allegation that the iCap Entities "operated as a Ponzi scheme beginning no later than October 2018 through July 2023" does not save their fraud claim, even if the confirmation order contained Ponzi findings to that effect. (*See* Compl. ¶ 4.) Ponzi findings merely establish a presumption in fraudulent conveyance cases that the transferor acted with fraudulent intent. *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008) (recognizing that the existence of a Ponzi scheme is "sufficient to establish the actual intent to hinder, delay, or defraud creditors under 11 U.S.C. § 548(a)"). But this is not a fraudulent conveyance case; Plaintiffs allege that Perkins aided and abetted **common-law fraud**. *Meridian*, 485 B.R. at 623 (rejecting the argument that *Slatkin* should be extended to a claim for aiding and abetting fraud). And even if the Christensens harbored fraudulent intent, that says nothing about the ***other*** eight elements of common-law fraud. Plaintiffs must still allege that the Christensens made a specific misrepresentation to a particular investor, and that the particular investor detrimentally relied upon the misrepresentation. Plaintiffs never do so—which is fatal to their claim. Because Plaintiffs do not plausibly and particularly allege a predicate claim of fraud, their claim for aiding and abetting fraud necessarily fails.

---

¶ 91.) And Plaintiffs do not claim that **anyone** made **any representation** about iCap Funding, iCap Investments, or Vault 1. So, investors in those funds have no claim.

[9] The Court can consider these materials (without converting this motion to one for summary judgment) because Plaintiffs specifically refer to them in their Complaint. (*E.g.*, Compl. ¶ 116; *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010)).

### 2. *The Complaint merely suggests Perkins knew Fund 1 could face default—not that Perkins had actual knowledge of a Ponzi scheme.*

Plaintiffs likewise fail to plausibly allege the second element of aiding and abetting fraud—namely, that Perkins had actual knowledge of the alleged Ponzi scheme and made the conscious choice to further the scheme. This element requires a defendant to know of the underlying wrong and "reach a conscious decision to participate . . . for the purpose of assisting another in performing a wrongful act." *Meridian*, 485 B.R. at 617; *cf. Schatz v. Rosenberg*, 943 F.2d 485, 496 (4th Cir. 1991). A plaintiff must "state factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Meridian*, 485 B.R. at 616 (quotation omitted).

Plaintiffs claim that "red flags" should have alerted Perkins that the Christensens were operating a Ponzi scheme. (*See* Compl. at 32.) But courts have recognized that such "red flags" are insufficient, because they do not create a plausible presumption of actual knowledge of the scheme. *See, e.g.*, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1246 (M.D. Fla. 2013); *see also Meridian*, 485 B.R. at 624–25 (relying on *Lerner* under Washington law). It is not enough to suggest that a defendant "should have known" of the scheme—the defendant must ***actually*** know. *Wiand*, 938 F. Supp. 2d at 1246; *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 536 (6th Cir. 2000).

Allegations that merely suggest Perkins knew facts that could have alerted it to a possible Ponzi scheme are therefore insufficient. For instance, Plaintiffs allege that Perkins had "actual knowledge" that iCap was unable to pay its bills—but knowing that a client is having financial difficulties is a far cry from knowing it is running a Ponzi scheme. Thus, the allegation does not render Plaintiffs' claim plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 570 (2007) (allegations that are "consistent with" wrongdoing but also "a wide swath" of legitimate conduct do not nudge a plaintiff's claims "across the line from conceivable to plausible"). Likewise, Plaintiffs claim that

Perkins knew of the scheme because Chris Christensen told Ms. Sandoval that proceeds from Fund 3 would be used to pay down debt. (Compl. ¶¶ 106, 116.) But Plaintiffs also allege that he told Ms. Sandoval this was "a valid use of [Fund 3's] proceeds," and Fund 3's offering materials plainly disclosed as much to investors. (*Id.*; *Ex. A.*) So there is no reason these facts would give Perkins "actual knowledge" of a Ponzi scheme, either.

At best, Plaintiffs' other allegations suggest only that Perkins knew Fund 1 faced potential default—which does not equate to knowledge of a fraud. Plaintiffs allege that Perkins attorneys simply evaluated whether Fund 1 was in default and whether there were ways to "avoid declaring a default and minimize [Fund 1's] litigation risk."[10] (Compl. ¶ 125.) Likewise, Perkins considered possible claims its client could face in light of the need to extend Fund 1's maturity date. (*Id.* ¶ 127.) And when Ms. Sandoval learned that the iCap Entities did not intend to pay investors in Fund 1 until December 2020, and had failed to include Perkins' edits to the extension agreement for Fund 1, she concluded that Perkins "would be unable to tell PwC that Fund 1 is not in default"— not that the Christensens were operating a Ponzi scheme. (*Id.* ¶ 148.)

The mere fact that a fund does not achieve its expected returns, or even that it faces default, does not mean that it was used to commit a Ponzi scheme; and it is unreasonable to suggest attorneys should conclude their client is engaged in fraud simply because the business is struggling. Investment funds by their nature involve a risk of investment loss, even if managed appropriately. Because Plaintiffs failed to plead facts showing Perkins had actual knowledge of the alleged fraud, Plaintiffs' aiding and abetting fraud claim must be dismissed. *Meridian*, 485 B.R. at 617; *see Schatz*, 943 F.2d at 489, 496 (holding plaintiff did not adequately allege law firm had actual knowledge

---

[10] Plaintiffs also mischaracterize this email, by claiming that it suggested the Christensens' communications had in fact been misleading. (*See id.* Compl. ¶ 166(e).) Read in context, the email simply stated that *if* the iCap Entities sent a notice of extension, and "*if* [iCap knows] now that they will fall short," *then* "the Fund is better off not being too 'rosy' about the outlook of the fund." (*Id.* ¶ 125 (emphasis added).) In short, the email does not show that Perkins knew Chris Christensen had misled investors; it shows that Perkins advised iCap to *avoid* inadvertently misleading investors if it believed the Funds would not perform.

sufficient to support claim for aiding and abetting fraud, despite claim that the firm "remain[ed] silent even though it knew that its client . . . was financially insolvent").

### 3. Plaintiffs merely allege that Perkins acted as iCap's attorneys, not that Perkins "substantially assisted" iCap's fraud.

Plaintiffs' claim fails for the independent reason that they do not plausibly allege that Perkins "substantially assisted" the Ponzi scheme. Plaintiffs were required—and failed—to allege sufficient facts to plausibly show that (i) Perkins affirmatively assisted, helped conceal, or by virtue of failing to act when required to do so enabled the fraud to proceed; **and** (ii) by doing so, Perkins proximately caused the investors' alleged damages. *Meridian*, 485 B.R. at 617 (quoting and adopting *In re Agape Lit.*, 681 F. Supp. 2d 352, 364 (E.D.N.Y. 2010)). In other words, Plaintiffs must show that Perkins made a "conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Id.*

Plaintiffs allege that Perkins "substantially assisted" the Christensens' alleged fraud in several general ways:

- Perkins gave legal advice as to extending the maturity dates of the funds, drafted amendment documents for Fund 1, and prepared documentation for Fund 3, (Compl. ¶¶ 177(a)-(b), (d));

- Perkins did not have a "frank discussion" with PwC about Fund 1's default status, warn Investors of the alleged fraud, or withdraw from representation of iCap, (*id.* ¶¶ 177(e)-(i));

- Perkins likewise did not tell Stalwart Capital about Fund 1's financial status during negotiations with that entity, (*id.* ¶¶ 131–36, 177(c));

- Perkins billed iCap for its services, (*id.* ¶ 177(j)); *and*

- Perkins "help[ed] the Christensens hide [the funds'] insolvency from Investors," (*id.* ¶ 177(h)).

None of these allegations is sufficient. To begin, Plaintiffs allege that Perkins learned some of these alleged facts **after** the Christensens had already made misleading statements and had already extended the maturity dates of Fund 1 and Fund 2. (*See*

Motion to Dismiss
Page - 15

Compl. ¶ 148 (alleging that Perkins learned about Fund 1's default status in January 2019, after the Christensens extended Fund 1 and Fund 2's maturity dates).) Plaintiffs do not allege that Perkins took any specific actions to further the alleged Ponzi scheme after learning about the manner in which the Christensens extended the maturity dates of Fund 1 and Fund 2; in fact, they claim that Perkins told iCap it could not continue conversations with PwC without disclosing Fund 1's default status. (*Id.*) The mere fact that Perkins allegedly learned of the Christensens' conduct after-the-fact does not mean that Perkins proximately caused the investors' alleged losses (on the contrary, it shows the opposite). Plaintiffs' other allegations do nothing more than show that Perkins was iCap's attorney and maintained its confidences—which is not "substantial assistance."

### a. Routine legal services are not "substantial assistance."

Numerous courts have recognized that an attorney's performance of routine legal services cannot be "substantial assistance" for purposes of aiding and abetting. *See, e.g.*, *Schatz*, 943 F.2d at 497 (holding that an attorney who "merely acts [as] a scrivener for the investment group" client by "paper[ing] the deal" does not provide substantial assistance to an alleged tort); *Abrams v. McGuireWoods LLP*, 518 B.R. 491, 503 (N.D. Ind. 2014) ("[T]he general rule is that, in cases involving business professionals like lawyers, substantial assistance means something more than the provision of routine professional services."). Thus, merely drafting fund documents or providing legal advice cannot, as a matter of law, constitute substantial assistance. *Schatz*, 943 F.2d at 497. And Plaintiffs' allegations that Perkins performed such legal services for iCap—including preparing documentation for the funds, drafting amendments, or providing advice about maturity dates—are insufficient to render Plaintiffs' claim plausible. *Id.*

### b. Non-disclosure is not "substantial assistance" absent a duty to disclose that does not exist here.

Similarly, Perkins had no duty to discuss iCap's finances with investors, PwC, Stalwart Capital, or anyone else—so its failure to do so cannot be substantial assistance. "Absent a duty to disclose, allegations that a defendant knew of the wrongdoing and did

Motion to Dismiss
Page - 16

not act fail to state an aiding and abetting claim." *Id.* at 496; *see also King v. George Schonberg & Co.*, 233 A.D.2d 242, 243 (N.Y. App. 1996). Simply put, "attorneys have no duty to 'blow the whistle' on their clients." *Schatz*, 943 F.2d at 493. On the contrary, attorneys have duties to **maintain** their client's confidences. *See* Ronald E. Mallen, 1 Legal Malpractice § 2:87 (2025 ed.) ("[A]ttorneys have a duty to prevent the unauthorized disclosure of confidential, secret, and privileged information."). Because Perkins had no duty to disclose iCap's confidences, Perkins' failure to do so cannot be "substantial assistance." *Schatz*, 943 F.2d at 496. Moreover, Perkins' alleged failure to inform Stalwart Capital's counsel about Fund 1's financial status in its communications with them cannot be "substantial assistance" regardless, because Plaintiffs do not allege that any investor knew about these communications—let alone relied upon them.

### c.  Mere inaction is not "substantial assistance."

Nor can Perkins be liable for failing to withdraw from its representation of iCap. First, inaction is not substantial assistance. *Abrams*, 518 B.R. at 504; *see also Am. Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 463 (8th Cir. 2013) (recognizing that liability for aiding and abetting must be based on the defendants' "affirmative acts, not acts it should have taken"). Second, Plaintiffs fail to establish that Perkins had a duty to withdraw. In passing, Plaintiffs claim that Perkins was required to withdraw "by Washington's Rules of Professional Conduct." (Compl. ¶ 156.) But the Rules of Professional Conduct "are not designed to be a basis for civil liability." Wash. R. Prof'l Cond., Scope cmt. 20. Instead, the Rules are designed "to provide guidance to lawyers," and an alleged violation "should not itself give rise to a cause of action against a lawyer" or "create any presumption in such a case that a legal duty has been breached." *Id.* And Rule 1.16, which relates to termination of representation, states that a lawyer **may** withdraw if "the client has used the lawyer's services to perpetrate a crime or fraud." Wash. R. Prof'l Cond. 1.16(b)(3). Withdrawal is therefore permissive—not required. *Id.* For these reasons, Perkins' failure to withdraw is not "substantial assistance," either.

25-80084-WLH   Doc 18   Filed 12/16/25   Entered 12/16/25 16:19:32   Pg 23 of 28

*d.   Billing for work performed is not "substantial assistance."*

Next, Plaintiffs allege that Perkins somehow "substantially assisted" alleged fraud by billing iCap for legal work. (Compl. ¶ 177(j).) That allegation makes no sense—a law firm cannot be liable to a third-party simply because it bills a client for the services it performed. And Plaintiffs fail to explain how Perkins could have proximately caused harm to the investors by billing iCap. *See Meridian*, 485 B.R. at 617 (to be substantial assistance, and act must proximately cause harm to the plaintiff). Accordingly, this allegation does not support a plausible claim for aiding and abetting.

*e.   Plaintiffs' sole remaining allegation is conclusory.*

All that remains is Plaintiffs' conclusory allegation that Perkins "help[ed] the Christensens hide the iCap Entities' insolvency from the Investors." (Compl. ¶ 168(h).) But Plaintiffs do not allege that Perkins did ***anything*** to affirmatively conceal iCap's insolvency—only that Perkins kept its client's confidences (as it was required to do as iCap's counsel) about Fund I's potential default. This threadbare allegation, without factual support, is insufficient to state a claim under *Iqbal* and *Twombly*.

**B.   The aiding and abetting breach of fiduciary duty claim also fails.**

Likewise, Plaintiffs' claim for aiding and abetting breach of fiduciary duty fails. Plaintiffs do not plausibly allege that the Christensens owed the investors fiduciary duties in the first place. And again, Plaintiffs fail to plausibly allege that Perkins knew of the Christensens' wrongdoing and provided them with substantial assistance.

*1.   Plaintiffs have not plausibly alleged a breach of fiduciary duty.*

To plead a claim for aiding and abetting breach of fiduciary duty, a plaintiff must first establish a fiduciary relationship with the primary wrongdoer. *Meridian*, 485 B.R. at 617–18 (citing *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217–18 (Wash. App. 2002)). As a matter of law, no fiduciary relationship existed between the Christensens and the investors—so Plaintiffs cannot pursue a claim for aiding and abetting breach of fiduciary duty. *See id.*

Under Washington law, a fiduciary relationship exists in **only** two situations: when the relationship has traditionally been considered to be fiduciary in nature (such as an attorney/client or doctor/patient relationship), or when special circumstances exist "in which one party justifiably relies on another to look after the former's financial interests." *Id.* at 618. At the motion to dismiss stage, a plaintiff cannot rely on conclusory allegations that the plaintiff "trusted" the wrongdoer to plead a fiduciary relationship. *Id.*; *3710 Irongate, LLC v. Unit Owners Ass'n. of Judson Plaza Condo.*, No. 86717-2-I, 2025 WL 3143153, at *8 (Wash. App. Div. 1 Nov. 10, 2025) ("Simply placing trust in someone is not sufficient to create a fiduciary relationship.").

Here, Plaintiffs allege no well-pleaded facts sufficient to establish that the Christensens were the investors' fiduciaries. Instead, Plaintiffs recite (i) legal conclusions, couched as factual allegations, that the investors shared a fiduciary relationship with the Christensens, (*see, e.g.*, Compl. ¶¶ 16, 89, 172); and (ii) threadbare allegations that the Investors trusted the Christensens, (*see id.* at ¶¶ 1, 80–88.)

The first set of allegations is insufficient under *Twombly* and *Iqbal*. *See, e.g.*, *Meridian*, 485 B.R. at 615 (a court does not need to accept as true recitals of a cause of action's elements). And the second set of allegations is insufficient under Washington law, because merely placing "trust and confidence" in another person does not establish a fiduciary relationship with that person. *Id.* at 620; *Micro Enhancement Int'l*, 40 P.3d at 1218 (holding that evidence was insufficient to establish fiduciary relationship when employee merely testified that he placed trust in an alleged fiduciary).

Even viewing Plaintiffs' allegations in the most charitable light, the Christensens were nothing more than managers of funds to which the investors contributed. But in general, "an investment adviser owes a fiduciary duty only to the fund it manages," **not** to individual investors in the fund. *Meridian*, 485 B.R. at 619–20. A direct fiduciary relationship with an investor arises only when the fund manager gives individual investors advice "as to how they should invest their funds based upon their individual

financial circumstances." *Id.* at 620 (citing *Liebergesell v. Evans*, 613 P.2d 1170, 1175 (Wash. 1980)). Plaintiffs do not allege that occurred here. Indeed, they never even say who the individual investors are. Thus, Plaintiffs have not plausibly established that the Christensens owed fiduciary duties to the investors, and their claim for aiding and abetting breach of fiduciary duty must be dismissed on that basis alone.

> 2. *Plaintiffs have not plausibly alleged that Perkins had actual knowledge of the Christensens' alleged breaches of fiduciary duty.*

Again, for an aiding and abetting claim to survive a motion to dismiss, the plaintiff must plausibly allege that the defendant "had actual knowledge of the primary violation." *Meridian*, 485 B.R. at 616. But Perkins could not have known of the Christensens' breach of fiduciary duty to the investors, where no such duty existed. And Plaintiffs rely on the same insufficient allegations for this claim that they used in their claim for aiding and abetting fraud. (*Compare* Compl. ¶ 166, *with id.* ¶ 175.) As discussed above, none of these allegations shows that Perkins knew the Christensens were conducting a Ponzi scheme—at best, they simply show that Perkins knew Fund 1 faced default. (*See supra* Sec. II(A)(2).) For this independent reason, Plaintiffs' claim for aiding and abetting breach of fiduciary duty fails. *Meridian*, 485 B.R. at 625.

> 3. *Plaintiffs have not plausibly alleged that Perkins substantially assisted the Christensens' alleged breaches of fiduciary duty.*

Here too, Plaintiffs rely on the same allegations to establish "substantial assistance" as they do for their fraud claim. (*Compare* Compl. ¶ 168, *with id.* ¶ 177.) Again, these allegations establish nothing more than the simple fact that Perkins provided iCap with legal services and maintained its confidences. (*See supra* Sec. II(A)(3).) Those allegations are insufficient to plead substantial assistance, so Plaintiffs' claim for aiding and abetting breach of fiduciary duty must be dismissed. (*See id.*)

## <u>CONCLUSION</u>

For the above reasons, the Court should dismiss the Complaint for lack of subject-matter jurisdiction, or dismiss it for failure to state a plausible claim for relief.

Dated:  December 16, 2025

By:  */s/ Nicholas J. Steverson*
Carolyn J. Fairless (admitted *pro hac vice*)
Jennifer J. Oxley (admitted *pro hac vice*)
Nicholas J. Steverson (admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:    303.244.1879
Email: fairless@wtotrial.com
        oxley@wtotrial.com
        steverson@wtotrial.com

John D. Munding
Munding, P.S.
309 E. Farwell Road, Suite 310
Spokane, WA  99218
Telephone: 509.590.3849
Email: john@mundinglaw.com

Attorneys for Defendant Perkins Coie LLP

<u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on December 16, 2025, I electronically filed the foregoing MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties, including Plaintiffs' counsel, through the Court's Electronic Case Filing System. Parties may access this filing through the Court's ECF system.

*/s/ Nicholas J. Steverson*